340 F.2d 150
 NATIONWIDE MUTUAL INSURANCE COMPANY, a corporation, Appellee,
v.
Philip AKERS, an infant under the age of twenty-one years,
Dorothy Akers, Charlotte Smith, Johnny Akers, Jonathon
Akers, an infant under the age of twenty-one years,
Charlotte Y. Smith, Administratrix of the Estate of Willie
Mae Akers, Deceased, and Edward Henry Smith, Appellants.
 No. 9536.
 United States Court of Appeals Fourth Circuit.
 Argued Sept. 30, 1964.
Decided Jan. 4, 1965.
 
 H. Lee Kanter, Norfolk, Va. (Kanter, Kanter & Sachs, Norfolk, Va., on brief), for appellants.
 E. Pryor Wormington, Norfolk, Va. (Rixey & Rixey, Norfolk, Va., on brief), for appellee.
 Before SOBELOFF, Chief Judge, and HAYNSWORTH and BOREMAN, Circuit judges.
 BOREMAN, Circuit Judge.
 
 
 1
 The Uninsured Motorist Law of Virginia requires that all automobile liability insurance policies issued in the State shall contain an endorsement indemnifying the insured for injury caused by an uninsured motor vehicle. Code of Va., sec. 38.1-381(b) (Michie 1953 as amended). In the present controversy Nationwide Mutual Insurance Company (hereinafter Nationwide) brought an action for declaratory judgment to determine the coverage of an uninsured motorist endorsement contained in a family automobile policy issued to George O. or Daisy Kessler.
 
 
 2
 The pertinent facts are these. The original policy of insurance was issued by Nationwide to the Kesslers on February 4, 1961, to expire on April 30, 1961. The policy contained the usual liability provisions covering personal injury and property damages and included an uninsured motorist endorsement. Two automobiles owned by Kessler, a 1960 Ford Galaxie and a 1958 Ford Fairlane 500, were listed on the declaration sheet which was part of the policy.
 
 
 3
 On February 11, 1961, Kessler traded the 1958 Ford to Edward Henry Smith, a defendant, for a 1959 Mercury and $250 in cash which Smith was unable to pay at the time. Smith and Kessler both knew that their signatures assigning the certificates of title for the two cars had to be acknowledged under Virginia law. With this in mind they visited a notary public on the day of the trade. Smith signed the certificate of title to the 1959 Mercury, acknowledged his signature before the notary and gave the title to Kessler. At the same time Kessler signed the certificate of title to the 1958 Ford, reserving a lien thereon for the $250, and the acknowledgment of his signature was duly notarized but whether or not Kessler gave the certificate of title to Smith was disputed. Kessler testified that he gave Smith the title at that time but Smith denied that he ever received it. As this was the only question of fact to be decided, the lower court submitted it to the jury by a special interrogatory. The jury found that Kessler had not delivered the title to Smith. However, the evidence does show that Smith took possession of the 1958 Ford on the day of the trade and used the car as his own until it was involved in a wreck on April 8, 1961.
 
 
 4
 Sometime between February 11 and March 17, 1961, Kessler purchased a 1957 Ford Fairlane for on March 17 Kessler telephoned the Nationwide agent requesting him to delete the 1958 Ford from his insurance policy and to substitute the 1957 model. As was customary when one automobile was to be substituted for another, the agent issued a replacement policy and canceled the original. The replacement policy, issued on March 17, listed on the declaration sheet the 1960 Ford Galaxie and the 1957 Ford Fairlane and contained the same liability provisions, the same uninsured motorist endorsement and the same expiration date, April 30, 1961, as the original policy. The replacement policy is the one involved here as it was in effect on April 8, 1961.
 
 
 5
 While driving the 1958 Ford on April 8, Smith was involved in an accident in which one of his passengers was killed and Smith, his wife and all other passengers were injured. To recover for their injuries and the wrongful death, Smith and the others instituted several actions in the District Court at Norfolk, Virginia, against Jerry Arlen Estep, the driver of the other car. Pursuant to the Virginia Uninsured Motorist Law, Code of Va., sec. 38.1-381(e) (Michie 1950 as amended), copies of the complaints were served on Nationwide. The complaints alleged, inter alia, that the 1958 Ford was an 'insured automobile' within the meaning of the uninsured motorist endorsement in the replacement policy issued to Kessler and the car driven by Estep was an 'uninsured automobile' under Virginia law. Nationwide denied liability and procured a stay of the proceedings in those actions until it could prosecute to a conclusion this declaratory judgment action.
 
 
 6
 Nationwide concedes that Estep was driving an 'uninsured automobile' within the terms of the Virginia statute and that Estep's negligence was the cause of the accident, but asserts that it was not liable to the deceased passenger or any of the injured parties because Kessler did not own the 1958 Ford at the date of the accident as required by the policy, Smith was not a permissive user of the 1958 Ford as required by the policy, and the policy issued to Kessler on March 17 did not cover the 1958 Ford as it was not listed on the declaration sheet. Defendants contend that under the Virginia law Kessler was still the legal owner of the 1958 Ford as he had not delivered the certificate of title to Smith as the law required, that Smith was using the car with Kessler's permission, and that the uninsured motorist endorsement contained in the policy covered any automobile owned by Kessler and registered in Virginia.
 
 
 7
 The District Court determined that Kessler was the legal owner of the 1958 Ford as title had not been delivered to Smith and that Smith was a permissive user within the meaning of the policy, but held that Nationwide was not liable because the policy in its entirety provided coverage only to the automobiles described in the declarations. This appeal followed.
 
 
 8
 For the purposes of this decision and in view of our ultimate conclusions with reference to limited policy coverage, we shall assume the correctness of the District Court's determination that, at the time of the accident, Kessler was the owner of the 1958 Ford and Smith was using it with Kessler's permission. We turn our attention to the remaining question-- Was the 1958 Ford an 'insured automobile' within the terms of the uninsured motorist endorsement which is a part of the policy issued to Kessler by Nationwide? We conclude, as did the District Court, that the question must be answered in the negative.
 
 COVERAGE OF UNINSURED MOTORIST ENDORSEMENT
 
 9
 Defendants contend that the 1958 Ford was an 'insured automobile' by the language of the insuring agreements in the uninsured motorist endorsement. The language on which they rely is found in the following policy provisions:
 
 
 10
 'II. DEFINITIONS '(a) Insured. The unqualified word 'Insured' means:
 
 
 11
 '(1) the Named Insured and, while residents of the same household, his spouse and the relatives of either;
 
 
 12
 '(2) any other person while occupying an insured automobile; '(b) Insured Automobile. The term 'insured automobile' means:
 
 
 13
 '(1) an automobile which is registered in Virginia and which is owned by the Named Insured or by his spouse if a resident of the same household;
 
 
 14
 '(2) an automobile while temporarily used as a substitute for an insured automobile as described in subparagraph (1) above, when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction; or
 
 
 15
 '(3) any other automobile while being operated by the Named Insured, or by his spouse if a resident of the same household; but the term 'insured automobile' shall not include:
 
 
 16
 '(i) under subparagraphs (1) and (2) above, an automobile unless being used by or with the permission of the Named Insured or his spouse if a resident of the same household; or
 
 
 17
 '(ii) under subparagraphs (2) and (3) above, an automobile owned by the Named Insured or by any resident of the same household.'
 
 
 18
 Neither party questions the fact that the defendants are insured under the 'omnibus clause' in paragraph (a)(2) above provided they were occupying an 'insured automobile.'[1]
 
 
 19
 It is the defendants' position that under paragraph (b)(1) any automobile then owned by Kessler and registered in Virginia was an 'insured automobile,' and as Kessler was the legal owner of the 1958 Ford at the time of the accident Smith was an insured driver. Nationwide on the other hand contends that the insuring agreement above must be construed with other provisions of the policy in which the uninsured motorist endorsement is incorporated and, when read and considered together, coverage is restricted to those automobiles described in the declarations. We think Nationwide is right.
 
 
 20
 The endorsement along with other applicable clauses and provisions constituted the contract of insurance between Nationwide and Kessler. To construe each clause or endorsement in isolation and without reference to the other policy provisions would do violence to basic contract law for insurance contracts, like other contracts, must be read and construed as a whole and not piecemeal. State Farm Mut. Auto. Ins. Co. v. Justis, 168 Va. 158, 190 S.E. 163 (1937); 29 Am.Jur., Insurance, sec. 250 (1960). Moreover, the endorsement is not a complete contract in itself as the defendants seem to contend. Nowhere does it show the parties to the agreement, the subject matter of the contract to which protection is extended, the period of time covered by the policy, or the amount of consideration to be paid for the protection provided. See 29 Am.Jur., Insurance, sec. 192 (1960). Only the declaration sheet of the policy reveals this information, yet the defendants argue that the declaration sheet and other provisions of the policy do not apply to the uninsured motorist endorsement.
 
 
 21
 It is apparent from the endorsement that the parties intended other provisions in the policy to apply. The prefatory language to the endorsement states:
 
 
 22
 'In consideration of the payment of the premium for this endorsement, the Company agrees with the Named Insured, subject to the limits of liability, exclusions, conditions and other terms of the endorsement and to the applicable terms of the policy: * * *.'
 
 
 23
 The last sentence of the declaration sheet also shows that the parties intended it to apply to the entire policy which includes the endorsement. The sentence reads:
 
 
 24
 'These Declarations together with the Family Automobile Policy form the policy identified by the policy number.'
 
 
 25
 The declaration sheet shows only two vehicles listed or described as 'owned automobiles,' namely, the 1960 Ford Galaxie and the 1957 Ford Fairlane. Item 1 of the declarations further states that the total number of the named insured's (Kessler's) private passenger automobiles on the effective date of the policy did not exceed the number described unless otherwise stated therein. Nowhere in the policy are any other automobiles specifically mentioned or described. In a separate policy provision which is made applicable to the uninsured motorist endorsement by reference, Kessler certified the statements made in the declarations were true. It provides:
 
 
 26
 'By acceptance of this policy, the Insured named in Items 2 (George O. or Daisy Kessler) of the declarations agrees that the statements in the declarations are his agreements and representations, that this policy is issued upon the truth of such representations, and that this policy embodies all agreements existing between himself and the Company or any of its agents relating to the insurance.'
 
 
 27
 When the declaration sheet is read in conjunction with paragraph (b)(1) of the uninsured motorist endorsement, it is clear that the parties only intended the two vehicles described in the declaration to be insured. In contracts of insurance as in other contracts, the intent of the parties is a pertinent consideration in determining the meaning of the different provisions and the manner in which they are to be applied. This intent is made clearer by the Virginia Code, sec. 46.1-504, requirement that all liability policies 'designate by explicit description or by appropriate reference, all motor vehicles with respect to which coverage is intended to be granted.'
 
 
 28
 The coverage provided by the policy is more clearly manifested by a definition of 'owned automobile' which appears on the reverse of the declaration sheet. An 'owned automobile' is defined as a 'private passenger, farm or utility automobile described in the policy.' This definition serves to restrict coverage in a situation like the present where all automobiles owned by the insured are not listed on the declaration sheet. The clear import of this language is to limit coverage of the policy to those automobiles owned by the insured and described in the policy declarations.
 
 
 29
 Defendants contend that 'owned automobile' is a 'generic' term and that this definition does not apply to the uninsured motorist endorsement because nowhere in the endorsement does the term 'owned automobile' appear. They readily concede that this definition applies to the liability provisions of the policy but assert that coverage under the uninsured motorist endorsement is broader. To read the policy in such manner is to make a technical distinction between the term 'owned automobile,' which does not appear in the endorsement, and the term 'automobile owned' which does appear in the endorsement. Such a distinction has no logical basis when the policy, read in its entirety, indicates that the parties intended that other provisions of the policy should apply to the uninsured motorist endorsement.
 
 
 30
 When the language of the uninsured motorist endorsement is read and considered together with the statements in the declaration and the definition of 'owned automobile,' the coverage intended by the language in the endorsement is clear. Protection is extended to three specific situations: (1) Any automobile owned by the Named Insured (Kessler) which is registered in Virginia and listed on the declaration sheet; (2) a temporary substitute for an owned automobile which does not belong to the Named Insured or any resident of the same household; and (3) any other automobile while operated by the Named Insured or his spouse if a resident of the same household so long as the automobile is not owned by the Named Insured or any resident of the same household.
 
 
 31
 If the uninsured motorist endorsement could possibly be construed without reference to any other provisions in the policy, any automobile which Kessler owned would be an 'insured automobile' whether driven by Kessler, his wife, or a third party (Smith) and even though the automobile was not described in the policy. The reasoning necessary to support such a conclusion would be as follows: Paragraph (b)(1) states that an insured automobile is any automobile registered in Virginia and owned by the Named Insured; paragraph (b)(2) adds to this a substitute automobile, and paragraph (b)(3) adds any other automobile while driven by Kessler or his wife if she is a resident of the same household; the second part of the definition of an 'insured automobile' excludes from paragraphs (b)(2) and (b)(3) any automobile owned by Kessler or a resident of his household, but this exclusion does not apply to paragraph (b)(1); consequently, Kessler could own an unlimited number of cars and all would be insured yet he would be paying premiums for coverage on only two. Such reasoning is fallacious and would lead to a result beyond the intent of the contracting parties.
 
 
 32
 Defendants argue in their brief that certain changes in the mandatory form of the uninsured motorist endorsement adopted by the State Corporation Commission of Virginia is conclusive evidence 'that all automobiles registered in Virginia and owned by the named insured were covered under the earlier form of the endorsement * * *.' The earlier form contains language identical to that in the endorsement in the present case. The later form amends the language so as to restrict coverage to only those automobiles to which the liability provisions apply. These administrative forms do not appear to be part of the record in this case but were we to consider them they would not persuade us to reach a different conclusion. By making this change it does not necessarily follow that the Commission tacitly admitted that any liability policy which contained the old form of endorsement would provide the coverage which the defendants here assert. The changes made in the forms can only be said to eliminate any doubt as to the extent of coverage of the uninsured motorist endorsement and may have been adopted for the sole purpose of removing such doubt. We are not advised in the premises but we do not view the changes as evidence of blanket coverage under contracts of insurance using the old forms of endorsement. We repeat that the endorsement standing alone does not constitute the contract of insurance issued by Nationwide to Kessler; it is only a part of the contract.
 
 
 33
 Defendants cite two cases in which recovery was allowed and which they maintain involved insuring agreements containing the same language as in the policy here under consideration. Beasley v. Wolf, 151 So.2d 679 (Fla.App.1963); Indiana Lumberman's Mutual Ins. Co. v. Russell, 243 La. 189, 142 So.2d 391 (1962). While the language of the policies in those two cases does not fully appear in the reports, it does not disclose that in either case was 'owned automobile' defined as a private passenger, farm or utility automobile described in the policy as in the instant case.
 
 
 34
 Affirmed.
 
 
 
 [1]
 Other pertinent policy provisions are shown as follows:
 Total of Named Insured's private passenger, farm and utility automobiles on effective date does not exceed the number described above, unless otherwise stated herein:
 Item 2
 Named Insured George O. or Daisy Kessler
 Item 3
 Policy Period: From 3-17-61 to 4-30-61
 Item 5
 These Declarations together with the Family Automobile Policy form the policy identified by the policy number.
 AMENDMENT OF DEFINITION OF 'OWNED AUTOMOBILE' ENDORSEMENT
 This endorsement is applicable only when the Named Insured owns more than one private passenger, farm or utility automobile on the effective date of this policy or on any renewal date thereafter, and all such vehicles are not described in this policy.
 It is agreed:
 That the definition of 'owned automobile' is amended to read: 'Owned Automobile' means
 (a) a private passenger, farm or utility automobile described in the policy,
 (c) a private passenger, farm or utility automobile ownership of any of which is acquired by the Named Insured during the policy period, provided
 (1) it replaces a described automobile, or
 (2) the Company insures all private passenger automobiles, farm automobiles and utility automobiles owned by the Named Insured on the date of such acquisition and the Named Insured notifies the Company within 30 days following such date,
 and includes a temporary substitute automobile.
 ENDORSEMENT 522
 FAMILY PROTECTION AGAINST UNINSURED MOTORISTS
 In consideration of the payment of the premium for this endorsement, the Company agrees with the Named Insured, subject to the limits of liability, exclusions, conditions and other terms of this endorsement and to the applicable terms of the policy:
 INSURING AGREEMENTS
 I. To pay all sums which the Insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of:
 (a) bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury,' sustained by the Insured:
 (b) injury to or destruction of (1) an automobile * * * and (2) the contents of an insured automobile * * *; caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile.
 CONDITIONS
 
 
 [1]
 Policy Provisions. None of the Insuring Agreements, Exclusions, Conditions or Other Provisions of the policy shall apply to the insurance afforded by this endorsement except the Conditions 'Notice' or 'Notice of Accident,' 'Subrogation,' 'Changes,' 'Assignment,' 'Cancellation' and 'Declarations.'