**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 17-1342

BRUCE LEVINE, Administrator of the Estate of Carlos Bolanos Castillo, deceased,

Plaintiff – Appellant,

and

MARCO A. GABARETTE,

Plaintiff,

v.

EMPLOYERS INSURANCE COMPANY OF WAUSAU,

Defendant – Appellee,

and

JESSICA LYNN COBLE; PURNELL FURNITURE SERVICES, INC.; PENSKE TRUCK LEASING COMPANY, INCORPORATED,

Defendants.

------------------------------

VIRGINIA TRIAL LAWYERS ASSOCIATION,

Amicus Supporting Appellant,

VIRGINIA ASSOCIATION OF DEFENSE ATTORNEYS,

Amicus Supporting Appellee.

**No. 17-1432**

MARCO A. GABARETTE,

        Plaintiff – Appellant,

    and

BRUCE LEVINE, Administrator of the Estate of Carlos Bolanos Castillo, deceased,

        Plaintiff,

    v.

EMPLOYERS INSURANCE COMPANY OF WAUSAU,

        Defendant – Appellee,

    and

JESSICA LYNN COBLE; PURNELL FURNITURE SERVICES, INC.; PENSKE TRUCK LEASING COMPANY, INCORPORATED,

        Defendants.

------------------------------

VIRGINIA TRIAL LAWYERS ASSOCIATION,

        Amicus Supporting Appellant,

VIRGINIA ASSOCIATION OF DEFENSE ATTORNEYS,

        Amicus Supporting Appellee.

Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria. Gerald Bruce Lee, District Judge. (1:16-cv-00355-GBL-TCB)

Argued: January 23, 2018　　　　　　　　　　Decided: April 12, 2018

———————————

Before WILKINSON, AGEE, and WYNN, Circuit Judges.

———————————

Affirmed by published opinion. Judge Agee wrote the majority opinion, in which Judge Wilkinson joined. Judge Wynn wrote a dissenting opinion.

———————————

**ARGUED:** Eugene C. Miller, WEINER, SPIVEY & MILLER, PLC; Kevin Michael Leach, TURBITT, O'HERRON & LEACH, PLLC, Burke, Virginia, for Appellants. Edwin Ford Stephens, CHRISTIAN & BARTON, LLP, Richmond, Virginia, for Appellee. Dominick Michael Mullori, Jr., Woodbridge, Virginia, for Amicus Virginia Trial Lawyers Association. **ON BRIEF:** Alexander S. de Witt, FREEBORN & PETERS LLP, Richmond, Virginia, for Amicus Virginia Association of Defense Attorneys.

———————————

AGEE, Circuit Judge:

Carlos Bolanos Castillo was killed and Marco A. Gabarette was injured in a motor vehicle accident during the course of their employment. Castillo's estate and Gabarette filed declaratory judgment actions seeking coverage under the uninsured/underinsured motorists endorsement of a third party's insurance policy for payment of the wrongful death and personal injury damages from the accident. The district court held that the policy did not extend coverage to Castillo's estate or Gabarette and granted summary judgment to the insurer. They now appeal. Because the plain language of the policy supports the district court's determination, we affirm the judgment of the district court.

I.

Purnell Furniture Services, Inc. ("Purnell"), a Virginia company, hired Castillo and Gabarette (collectively, the "Plaintiffs") as independent contractors to deliver furniture in northern Virginia.[1] Purnell regularly hired such independent contractors to deliver its furniture in the contractors' vehicles. For this particular delivery, the originally scheduled contractors were unable to fulfill the order, and Purnell inquired whether the Plaintiffs could do the job. Due to Purnell's last-minute request, the Plaintiffs did not have a sufficient vehicle available, so Purnell permitted them to use a truck for that delivery that Purnell had rented from Penske.

---

[1] For convenience, we include Castillo's estate within the "Plaintiffs" definition and only distinguish between Castillo and his estate where indicated.

Gabarette drove the truck with Castillo as passenger. En route to their destination, they pulled over on the side of the interstate so Castillo could check on the security of the furniture load. Another driver then struck the rented Penske truck, killing Castillo and injuring Gabarette.[2]

At the time of the accident, Purnell had a motor vehicle insurance policy (the "Policy") issued by Employers Insurance Co. of Wausau ("Wausau"), which includes an uninsured/underinsured motorists ("UIM")[3] endorsement as required by the applicable state law of Virginia. *See* Va. Code Ann. § 38.2-2206(A); *see also id.* § 38.2-2206(B) (mandating that UIM coverage extend to "any person who uses the motor vehicle to which the policy applies, with the expressed or implied consent of the named insured"). The Policy's "Schedule of Coverages and Covered Autos" (i.e., the "Declarations Pages" or "Schedule") lists the insurance coverages that Purnell purchased. These coverages are identified on the Declarations Pages as limited "to those autos shown as covered autos." J.A. 68.[4] Covered autos are designated by a code listed next to a particular coverage on the Schedule, and the "Motor Carrier Coverage Form" defines each code. Under the Schedule, the Policy extends liability coverage to all autos designated by code "61," which is defined as "Any Auto" on the Motor Carrier Coverage Form. J.A. 134.

---

[2] Bruce Levine brought the current action as administrator of Castillo's estate and is the proper party before the Court.

[3] Virginia law treats uninsured and underinsured coverages similarly, so case law that applies to one applies to the other as well. *See Seals v. Erie Ins. Exch.*, 674 S.E.2d 860, 863 n.2 (Va. 2009) ("While previous cases have distinguished uninsured motorist coverage from liability coverage, those distinctions equally apply to underinsured motorist coverage, which is a similar concept . . . ."). We designate "uninsured/underinsured motorists" as "UIM" for convenience.

[4] We have omitted alterations, citations, footnotes, and internal quotation marks here and throughout this opinion, unless otherwise noted.

However, for UIM coverage—as opposed to liability coverage—the Schedule restricts covered autos to those designated by code "62," which the Motor Carrier Coverage Form defines as "Owned Autos Only." J.A. 134. The Policy lists only three vehicles on the "Schedule of Covered Autos You Own," none of which are the rented Penske truck.

The Declarations Pages also reference the UIM endorsement for the limits of that particular coverage, which provides that Wausau would "pay in accordance with the Virginia Uninsured Motorists Law, all sums the insured is legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle." J.A. 105. For UIM purposes, an insured party is defined as "[a]nyone . . . occupying a covered auto." J.A. 105. The UIM endorsement defines "covered auto" as "a motor vehicle, or a temporary substitute, with respect to which the bodily injury or property damage liability coverage of the policy applies." J.A. 104.

Castillo's estate and Gabarette filed separate suits against the alleged negligent driver in the Fairfax County, Virginia, Circuit Court.[5] Because of the driver's limited insurance coverage, the Plaintiffs also brought an action in the same state court against Wausau for a declaration as to UIM coverage under the Policy and their entitlement to that coverage. Wausau removed the declaratory judgment action to the U.S. District Court for the Eastern District of Virginia on the basis of diversity jurisdiction pursuant to

---

[5] These suits were not resolved before the initiation of this case, and we are unaware of any resolution.

28 U.S.C. § 1332. Wausau and Castillo's estate filed cross-motions for summary judgment.[6]

The district court granted Wausau's motion for summary judgment and denied Castillo's estate's motion regarding UIM coverage.[7] Applying Virginia law, the district court analyzed the Policy and held that the plain language of its terms dictated that the UIM coverage applied only to those vehicles that Purnell owned. Because Purnell did not own the Penske truck, it was not a "covered auto," and therefore the Plaintiffs were not entitled to UIM coverage.

The Plaintiffs filed a timely notice of appeal, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

II.

We review a district court's decision to grant summary judgment de novo. *OpenRisk, LLC v. Microstrategy Servs. Corp.*, 876 F.3d 518, 527 (4th Cir. 2017). "Summary judgment is appropriate when there are no genuine issues of material fact and the moving party . . . is entitled to judgment as a matter of law." *Id.* The facts in this case are not in dispute.

---

[6] Wausau filed a motion for summary judgment on all claims by the Plaintiffs. Castillo's estate filed a cross-motion for summary judgment on its claims against Wausau. Although Gabarette defended himself against Wausau's motion, he did not file his own motion for summary judgment.

[7] The district court also addressed several additional issues that are not before the Court in this appeal.

Because this case was removed to federal court pursuant to diversity jurisdiction, we apply Virginia law, which governs any substantive issues. *Stahle v. CTS Corp.*, 817 F.3d 96, 99–100 (4th Cir. 2016) ("Because federal jurisdiction in this matter rests in diversity, our role is to apply the governing state law."). Courts in Virginia apply traditional principles of contract interpretation when reviewing insurance policies. *TravCo Ins. Co. v. Ward*, 736 S.E.2d 321, 324 (Va. 2012). The intent of the parties is the focus of the inquiry. *Id.* at 325. A court will construe unambiguous terms of the policy according to their plain meaning. *Id.* Importantly, no contract provision "will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words needlessly." *Id.* Indeed, "[e]ach phrase and clause of an insurance contract should be considered and construed together and seemingly conflicting provisions harmonized when that can be reasonably done, so as to effectuate the intention of the parties as expressed therein." *Id.*; *accord Nationwide Mut. Ins. Co. v. Akers*, 340 F.2d 150, 154 (4th Cir. 1965) ("To construe each clause or endorsement in isolation and without reference to the other policy provisions would do violence to basic contract law for insurance contracts, like other contracts, must be read and construed as a whole and not piecemeal.").

If an insurance policy *is* ambiguous, however, it is ordinarily construed against the insurance company. *St. Paul Fire & Marine Ins. Co. v. S.L. Nusbaum & Co.*, 316 S.E.2d 734, 736 (Va. 1984) ("The courts, accordingly, have been consistent in construing the language of such policies, where there is doubt as to their meaning, in favor of that interpretation which grants coverage, rather than that which withholds it. Where two

constructions are equally possible, that most favorable to the insured will be adopted. Language in a policy purporting to exclude certain events from coverage will be construed most strongly against the insurer."). The insurer has the burden of proving lack of coverage. *Ward*, 736 S.E.2d at 325.

In this case, the plain language of the Policy resolves the issue. In construing similar insurance policy provisions, the Supreme Court of Virginia has been clear that the designating language of the declarations page determines the applicability of UIM coverage. *Bayer v. Travelers Indem. Co.*, 267 S.E.2d 91, 91 (Va. 1980) (per curiam) (answering in the negative "the question [of] whether a claimant, injured while a passenger in his own uninsured automobile during a collision with another uninsured vehicle, may recover under the uninsured motorist endorsement of a liability policy written on other vehicles owned by the driver of the claimant's automobile"); *see Nationwide Mut. Ins. Co. v. Hill*, 439 S.E.2d 335, 337 (Va. 1994) (explaining that, in *Bayer*, "[t]he declarations page of [the] policy contained a specific section addressing vehicles included for the purpose of the UM coverage," which the *Bayer* court relied on for its holding); *see also Akers*, 340 F.2d at 154 (holding that a Virginia UIM endorsement "must be construed with other provisions of the policy in which the uninsured motorist endorsement is incorporated" and therefore concluding that UIM "coverage is restricted to those automobiles described in the declarations").

The Supreme Court of Virginia's decisions in *Bayer* and *Hill* control our decision here. In *Bayer*, the plaintiff, Bayer, was riding as a passenger in his own uninsured vehicle, which was driven by Whitaker, who did have an automobile insurance policy

9

with UIM coverage. 267 S.E.2d at 91–92. The two men were "road testing the vehicle" when they were in an accident with another driver whose car was also uninsured. *Id.* at 92. Of the three men, only Whitaker had insurance, so Bayer sought to establish UIM coverage under Whitaker's insurance policy for injuries Bayer sustained in the accident. *Id.*

The UIM endorsement of Whitaker's policy extended coverage to "any . . . person while occupying an insured automobile." *Id.* The term "insured automobile" was defined as "an automobile registered in Virginia with respect to which the bodily injury and property damage liability coverages of the policy apply." *Id.* Bayer contended that his case depended upon resolution of the issue of "whether the vehicle in which he was riding was an insured automobile within the meaning of the endorsement." *Id.* He argued that, because Whitaker was a named insured under the policy and was driving Bayer's vehicle with permission, "the omnibus provisions of Whitaker's policy afforded Whitaker protection in the operation of the automobile." *Id.* And because Whitaker was protected while in Bayer's automobile for liability purposes, Bayer was "the occupant of an automobile with respect to which the bodily injury and property damage liability coverages of the policy apply." *Id.* In other words, because "Whitaker's liability coverage followed Whitaker into the Bayer vehicle, . . . the vehicle thereby became insured" for UIM purposes. *Id.*

The Supreme Court of Virginia disagreed with Bayer. First, the court held that the policy "was issued to Whitaker individually and covered two described motor vehicles." *Id.* at 93. Next, the court noted that the UIM endorsement "was subject to the insuring

10

agreements of the automobile and garage liability provisions of the policy; they covered Whitaker's use of a non-owned automobile only if Whitaker became legally obligated to pay damages." *Id.* And finally, Bayer "did not qualify as a person insured under any of the basic liability provisions of the policy." *Id.*

As relevant to the case now before us, the Supreme Court of Virginia later clarified its *Bayer* holding in *Hill*:

> The UM endorsement definitions considered in *Bayer* are identical to the definitions contained in the [insurance] policy here. However, to determine whether these definitions were satisfied, providing UM coverage for Bayer, the Court in *Bayer* looked to other relevant portions of the policy.
>
> The Court in *Bayer* held that at least two portions of the policy's provisions precluded coverage from Bayer under the UM endorsement. First, the Court concluded that only *owned* vehicles were covered by the policy. Although specific policy provisions were not recited in the opinion, the basis for this holding is clear from the record on file with the Court. The declarations page of Whitaker's policy contained a specific section addressing vehicles included for the purpose of the UM coverage. Only "automobiles owned by the Named Insured" were designated for insurance coverage under the UM endorsement and, therefore, the policy did not cover a vehicle owned by Bayer.

439 S.E.2d at 337.[8]

Here, as in *Bayer*, the Declarations Pages of the Policy limit the UIM coverage to only certain automobiles: code 62 autos. The Motor Carrier Coverage Form defines code 62 as "Owned Autos Only." J.A. 134. Because the Penske truck is not listed in the Policy

---

[8] In *Hill*, the Supreme Court of Virginia held that the plaintiff was entitled to UIM coverage because the insurance policy "did not limit the definition of the vehicle to one owned by the named insured, as the policy did in *Bayer*; nor did it include any language which would restrict the definition of 'insured vehicle' to a vehicle identified or described in the policy provisions." 439 S.E.2d at 337–38. The court noted that the declarations page was not part of the record in the case before it. *Id.* at 338 n.2.

as one of the owned vehicles, there is no UIM coverage related to it under the Policy. This result is plainly required by not only the *Bayer* decision but by the clear public policy of Virginia as to UIM insurance coverage. Indeed, "[i]n Virginia, uninsured motorist coverage is meant to protect an insured motorist, his family and permissive users of *his vehicle* against the peril of injury by an uninsured wrongdoer, not to provide insurance coverage upon each and every uninsured vehicle to everyone." *Bayer*, 267 S.E.2d at 93 (emphasis added).[9]

The thrust of the Plaintiffs' case is that the required UIM endorsement has a definition of "covered auto" that is broader than the UIM limitation of the Policy's Declarations Pages. However, the Supreme Court of Virginia rejected a similar argument in *Bayer*. Moreover, Virginia follows the well-settled principle in contract law of applying specific provisions of a contract over more general provisions dealing with the same subject matter. *Appalachian Reg'l Healthcare v. Cunningham*, 806 S.E.2d 380, 385 n.9 (Va. 2017) ("When two provisions of a contract conflict with one another, and one provision specifically addresses the dispute at hand while the other remains general, we have consistently held that the specific provision will govern over the general."). Comparing the two provisions at issue in this case, the Policy's Declarations Pages place limitations on UIM coverage that are more specific than the generic UIM endorsement

---

[9] In addition, the record contains no evidence that Purnell ever paid a premium for UIM coverage for rented vehicles. *See* J.A. 70–71 (hired autos schedule listing premiums for liability and physical damage coverages only).

which, according to the Plaintiffs, provides coverage to any vehicle covered by the Policy whatsoever. *See id.* The Plaintiffs' view is simply not consonant with Virginia law.

To this end, another Supreme Court of Virginia case is on point: *Stone v. Liberty Mutual Insurance Co.*, 478 S.E.2d 883 (Va. 1996). In *Stone*, the plaintiff was an employee of a restaurant who made pizza deliveries in his own vehicle. *Id.* at 883. While making a delivery, he was injured in an accident with another driver. *Id.* That driver's insurance policy limits were inadequate to fully compensate Stone for his injuries, so he sought UIM coverage under the restaurant's automobile insurance policy. *Id.* The terms of the restaurant's policy limited UIM coverage to "include only those autos [the restaurant] owns." *Id.* at 884. Stone argued that, because his vehicle was covered by the liability provisions of the restaurant's policy, which extended liability coverage to certain non-owned vehicles, Virginia law required the insurer to extend UIM coverage to him regardless of the policy's defined terms for UIM coverage. *Id.*; *see* Va. Code Ann. § 38.2-2206(B) (defining an "Insured" person for UIM purposes in part as "any person who uses the motor vehicle to which the policy applies, with the expressed or implied consent of the named insured"). Therefore, Stone contended that the policy's limiting UIM coverage to certain owned vehicles was invalid. 478 S.E.2d at 884. The insurer, on the other hand, argued that it could "limit who is an insured without violating the provisions of subsection (B) of the statute." *Id.* at 885.

The Supreme Court of Virginia agreed with the insurer, holding that the UIM statute did not "require that all the same vehicles and insureds be covered under both liability and uninsured motorist coverages of the same policy." *Id.* Instead, the statute

mandated only "that uninsured motorist coverage be provided to those who are in . . . the motor vehicles listed in the policy, as opposed to any vehicle to which the policy might apply." *Id.* at 886.

*Stone* refutes the Plaintiffs' argument here and weighs in favor of Wausau. Like the restaurant's policy in *Stone*, the Policy here specifically limits UIM coverage to owned vehicles, while extending liability coverage to certain non-owned vehicles. The Plaintiffs seek to use the broad language in the endorsement to support UIM coverage despite this limitation, but the limitation is clearly permitted by Virginia state law, as *Stone* plainly held. The Plaintiffs therefore cannot use the broad language in the UIM endorsement to gain UIM coverage.

Failing on that argument, the Plaintiffs also contend that the Policy's provisions here are nonetheless ambiguous and that the Policy should be construed against Wausau. Although ambiguous provisions are ordinarily construed against the insurer, the reason for this preference is that insurance companies are typically the drafters of insurance policies. *Appalachian Reg'l Healthcare*, 806 S.E.2d at 386 n.10 (noting that the "principle that insurance policies should be interpreted in favor of insureds" "exists in part because insurance policies are contracts whose language is ordinarily selected by insurers rather than by policyholders"). But here, the generic UIM endorsement is solely the creation of the Virginia State Corporation Commission ("SCC"), which requires the endorsement for every motor vehicle policy issued in Virginia. In contrast, the Policy's Declarations Pages, which were written by Wausau, have no ambiguity as the covered autos provision is clear: there is no UIM coverage for the non-owned Penske truck. In

that circumstance, "[t]he interpretative presumption favoring insureds . . . plays no role in our analysis." *Id.*

The Policy's UIM endorsement is word-for-word the same as the form required by the SCC. *Compare* Va. State Corp. Comm'n, <u>Uninsured Motorists Endorsement</u> <u>(Virginia)</u> (2002), https://www.scc.virginia.gov/boi/co/pc/auto/ca/CA21211102.pdf (saved as ECF opinion attachment), *with* J.A. 104–07. Because the SCC adopted this form, Wausau was *required* to use it. *See* Va. Code Ann. § 38.2-2220 (stating that, "after any standard form is adopted by the [SCC], no insurer shall use any form covering substantially the same provisions contained in the standard form unless it is in *the precise language* of the form filed and adopted by the [SCC]" (emphasis added)); *see also* J.A. 477 (district court stating, "The UM/UIM Endorsement is a standard form promulgated by the Virginia State Corporation Commission."); Opening Br. 24 (conceding that the UIM endorsement "is a standard form promulgated by the Virginia Corporation Commission"). It would be illogical to penalize an insurance company for using a form it is required to use by law, especially when the highest court of the state has directly held that an insurance company may limit the vehicles that are subject to UIM coverage under the required endorsement. *See Stone*, 478 S.E.2d at 885–86 (holding that insurance policies may limit UIM coverage to owned vehicles without violating state law). And unlike the government-mandated UIM endorsement, the Declarations Pages were a result of contract negotiations by the parties. "This language which the parties[] contracted to cannot simply be ignored." *Bartolomucci v. Fed. Ins. Co.*, 770 S.E.2d 451, 455 (Va. 2015).

15

Finally, the Plaintiffs rely on a case that they did not cite below: *Seals v. Erie Insurance Exchange*, 674 S.E.2d 860 (Va. 2009). If anything, *Seals* supports the rationale of the district court in the case at bar. In *Seals*, the plaintiff "was injured in an accident with an underinsured driver while test driving a vehicle owned by [a dealership]." *Id.* at 861. The dealership's UIM coverage had a provision similar to the one in this case stating that it covered anyone "occupying a covered auto." *Id.* And, as in the standard UIM endorsement form in this case, the endorsement in *Seals* defined "covered auto" as "a motor vehicle . . . with respect to which the bodily injury or property damage liability coverage of the policy applies." *Id.* The trial court looked to the liability provision of the policy, which stated that liability coverage was not available to customers of the dealership who have their own auto insurance. *Id.* On appeal, analyzing the plain language of the policy, the Supreme Court of Virginia determined that the trial court "incorrectly focused on whether [the plaintiff], as the driver of the vehicle, was entitled to liability coverage to determine if he was entitled to underinsured motorist coverage." *Id.* at 863. Instead, the proper course was to look to the declarations page, which showed the automobile being test driven was covered by the dealership's policy for liability. *Id.* Because the UIM endorsement provided coverage to occupants of those *vehicles* named on the declarations page with liability coverage, regardless of whether the occupants themselves had liability coverage under the policy, the test-driven vehicle was a covered auto, and the plaintiff was thus entitled to UIM coverage. *Id.* at 863–64.

*Seals* is in concert with our conclusion here, as both cases are resolved by the plain language of the respective declarations pages. Although the court in *Seals* followed the

16

language used in the UIM endorsement—the same language used in this case—it was the declarations page that identified the vehicles that were covered under the UIM endorsement. Thus, *Seals* is of no benefit to the Plaintiffs.

The dissent's reading of the Policy would lead to absurdity, potentially with disastrous results for Virginia insurers and insureds alike. Virginia courts will not read contracts to produce absurd results. *Transit Cas. Co. v. Hartman's, Inc.*, 239 S.E.2d 894, 896 (Va. 1978) ("While any ambiguity must be resolved against the insurer, the construction adopted should be reasonable, and absurd results are to be avoided."). There is no way to cabin the dissent's interpretation to this case only, mainly because the UIM endorsement is a standard, required form. Because the parties are required to use the UIM endorsement form, a policy would automatically extend UIM coverage to every vehicle to which it extended liability coverage: a public policy choice made at no place in Virginia law. For example, if an auto insurance policy provides liability coverage to hired or borrowed vehicles—as the Policy does, *see* J.A. 70—then by the dissent's reasoning those vehicles must be covered by the UIM endorsement even where the parties bargain to exclude that coverage, as the Declarations Pages and premium record show here. This is an absurd result and one not in line with the Supreme Court of Virginia's ruling in *Stone* (the dissent's discussion of which is relegated to a footnote). *See* 478 S.E.2d at 885 (holding that Virginia's UIM statute does not "require that all the same vehicles and insureds be covered under both liability and uninsured motorist coverages of the same policy").

17

As a court sitting in diversity, we are bound to apply state law, not create it, as the dissent would do. *Stahle*, 817 F.3d at 99–100. So when the Supreme Court of Virginia holds that parties may contract to limit UIM coverage to certain vehicles, *Stone*, 478 S.E.2d at 885, and that courts should look to the declarations page to determine which vehicles have UIM coverage, *Bayer*, 267 S.E.2d at 93; *Hill*, 439 S.E.2d at 337, we cannot by fiat compel UIM coverage for non-owned vehicles when an insurer and insured contract to limit that coverage to only owned vehicles.

As previously noted, Virginia law permits the insurer to limit UIM coverage to owned vehicles via the declarations page, despite the inclusive wording of the SCC-mandated UIM endorsement. *See Stone*, 478 S.E.2d at 886; *Hill*, 439 S.E.2d at 337. Wausau so limited the UIM coverage in this case, and the district court properly followed the terms of the Policy to award summary judgment to it.

III.

For these reasons, the judgment of the district court is

*AFFIRMED*.

WYNN, Circuit Judge, dissenting:

Consider the auto insurance policy at issue in this case, which has two relevant components. The first—the Declarations Pages—states that the Liability portion of the policy covers "Any 'Auto'" and that the Uninsured/Underinsured Motorist ("UIM") portion covers "Owned 'Autos' Only." J.A. 68, 148. The second—the UIM Endorsement—provides that, for purposes of that Endorsement, a "[c]overed auto" is "a motor vehicle . . . with respect to which the 'bodily injury' or 'property damage' *liability coverage* of the policy applies." J.A. 104 (emphasis added). In other words, because the Liability policy covers "Any 'Auto,'" so too must the UIM policy, notwithstanding the fact that the Declaration Pages state UIM coverage applies to "Owned 'Autos' Only." J.A. 68, 148. Even the craftiest of lawyers would find it difficult to claim such documents are not ambiguous. Yet that is precisely what the majority opinion concludes. *Ante* at 9.

The majority opinion asserts that several decisions by the Supreme Court of Virginia dictate that conclusion. But a close reading of those decisions reveals that the Supreme Court of Virginia has not addressed—much less decided—the proper result when, as here, an insurance policy's Declarations Pages conflict with an Endorsement included in the same policy. Absent a controlling decision from the Virginia Supreme Court, this Court should follow settled state law governing the interpretation of ambiguous coverage terms in insurance contracts, which holds that the ambiguous terms should be construed in favor of coverage. Rather than applying this settled Virginia law, the majority opinion engages in complex legal gymnastics, resolving the ambiguity

19

through interpretive principles that lack any basis in Virginia law. Accordingly, I respectfully dissent.

## I.

The majority opinion maintains that the Supreme Court of Virginia's decisions in *Bayer v. Travelers Indemnity Co.*, 267 S.E.2d 91 (Va. 1980) (per curiam), and *Nationwide Mutual Insurance Co. v. Hill*, 439 S.E.2d 335 (Va. 1994), "control" this case. *Ante* at 9. I disagree.

In *Bayer*, the claimant (Bayer) was a passenger in his own uninsured vehicle and was injured when the driver of his car (Whitaker) collided with another uninsured vehicle. *See* 267 S.E.2d at 91–92. Bayer thus sought to recover under Whitaker's UIM policy. *See id.* As in this case, the UIM Endorsement in *Bayer* stated that UIM coverage applied to vehicles to which the Liability policy applied. *See id.* at 92. Significantly, under the policy, Liability coverage extended to non-owned vehicles only *when the insured was at fault*. *See id.* at 93. The court concluded that because (1) Bayer's vehicle was a "non-owned" vehicle for purposes of Whitaker's policy, and (2) Whitaker was not at fault, Bayer was not entitled to recover under Whitaker's policy. *See id.*

The majority opinion makes much of the fact that fourteen years later, in *Hill*, the Supreme Court of Virginia re-examined the record in *Bayer* and determined that, as in this case, the Declarations Pages provided that only automobiles owned by the insured were covered under the UIM policy. *Ante* at 11 (quoting *Hill*, 439 S.E.2d at 337). Under the terms of the Declarations Pages, therefore, Bayer would not have been covered under

20

Whitaker's policy, because Whitaker did not own the vehicle. *See Hill*, 439 S.E.2d at 337. According to the majority opinion in this case, *Bayer*, as clarified by *Hill*, establishes that a coverage definition in the Declarations Pages controls, to the extent it conflicts with a definition in an Endorsement. *Ante* at 12. But *Hill*'s clarification of *Bayer*'s facts does not resolve the ambiguity at issue in this case. Unlike here—in which there is a conflict between the Declarations Pages and the Endorsement as to whether UIM coverage is available—Bayer was not entitled to coverage under the plain language of *both* the Declarations Pages and the Endorsement. *See Hill*, 439 S.E.2d at 337. As a result, the Supreme Court of Virginia did not consider, much less decide, the critical question presented by this case: what to do when the language of the Declarations Pages leads to a different result than the language of the Endorsement?

*Hill* also failed to address that question. As the majority opinion here notes, the record in *Hill* did not include the Declarations Pages. *Ante* at 11 n.8 (citing *Hill*, 439 S.E.2d at 338 n.2). Faced with this omission, *Hill* treated the UIM policy as if it "did not limit the definition of [a covered] vehicle to one owned by the named insured, as the policy did in *Bayer*." 439 S.E.2d at 337. In other words, the court assumed, without having the Declarations Pages available, that they would not have excluded the vehicle at issue from being covered. *See id.* Then, turning to the language in the Endorsement, the court noted that, as in *Bayer*, the Endorsement stated UIM coverage applied to vehicles covered by the Liability policy. *See id.* at 337–38. As in *Bayer*, the Liability policy covered non-owned vehicles *only* if the insured was at fault. *Id.* at 338. Unlike in *Bayer*, however, the driver from whom coverage was sought was also undisputedly at fault in

21

*Hill*, so the Liability coverage—and by virtue of the definition in the Endorsement, the UIM coverage—applied. *See id.* Accordingly, like the policy in *Bayer*, the Declarations Pages and Endorsement in the policy at issue in *Hill both led to the same result*—just this time, they both favored coverage. *Hill*, therefore, did not address the question at issue in this case—how a court should resolve a discrepancy in terms of coverage between the Declarations Pages and an Endorsement.

Thus, neither *Bayer* nor *Hill* provides any guidance regarding whether we should follow the definitions in the Declarations Pages or the Endorsement in determining whether coverage is available.[*] Accordingly, we must follow state law canons of construction governing the interpretation of insurance contracts. Here, we have two directives. First, the contract's terms "must be considered and construed together, and any internal conflicts between provisions must be harmonized, if reasonably possible, to effectuate the parties' intent." *Virginia Farm Bureau Mut. Ins. Co. v. Williams*, 677 S.E.2d 299, 302 (Va. 2009) (Keenan, J.). "When a disputed policy term is unambiguous," a court must apply the "plain meaning as written." *Id.* Second, "if disputed policy language is ambiguous and can be understood to have more than one meaning, we construe the language in favor of coverage and against the insurer." *Id.*;

---

[*] The majority opinion also relies on *Stone v. Liberty Mutual Insurance Co.*, 478 S.E.2d 883 (Va. 1996). In *Stone*, the Supreme Court of Virginia decided a question not at issue in this case—what level of uninsured motorist insurance is *required* by Virginia statute. *Stone* held that under the relevant statute, coverage is required only for owned vehicles. *See id.* at 886. But *Stone* sets a floor for UIM coverage, not a ceiling. It in no way bars an insurer from contracting to provide UIM coverage for non-owned vehicles, or an insured from contracting with an insurer to obtain such coverage. The relevant question here is whether the Defendant entered into such a contract.

22

*accord Virginia Farm Bureau Mut. Ins. Co. v. Gile*, 524 S.E.2d 642, 645 (Va. 2000). "Language in a policy purporting to exclude certain events from coverage will be construed most strongly against the insurer." *St. Paul Fire & Marine Ins. Co. v. S.L. Nusbaum & Co.*, 316 S.E.2d 734, 736 (Va. 1984)

As explained above, the terms of the contract here cannot be harmonized. There is simply no squaring two provisions, one of which purports to cover "Any Auto" and the other of which purports to cover "Owned Autos Only." The majority claims that the more specific document (i.e. the Declarations Pages) should control, but that assertion finds no support in the language of the policy or Virginia law. As to the language of the policy, the Endorsement begins in boldface, all-caps type that states, "**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**." J.A. 104. This language arguably establishes that the Endorsement should control.

As to Virginia law, perhaps the most instructive case from the Virginia Supreme Court is *Seals v. Erie Insurance Exchange*, 674 S.E.2d 860 (Va. 2009). In that case, Seals was test-driving a vehicle at a car dealership when he was hit by an underinsured motorist. *See id.* at 861. The car dealership's insurance company sought a declaratory judgment stating that Seals was not covered under the dealership's UIM policy. *See id.* As with the Endorsement here—the UIM Endorsement in *Seals* defined a "covered auto" as "a motor vehicle . . . with respect to which the bodily injury . . . liability coverage of the policy applies." *Id.* (emphasis omitted). The *Seals* court thus looked to the Liability coverage, which stated "[w]e will pay all sums anyone we protect legally must pay for property damage to autos." *Id.* (emphasis omitted). The term "anyone we protect"

23

included, among other definitions, "[a]nyone else while using an auto we insure with your permission, *except . . . your customer who has other available insurance* with limits at least equal to those required by law in the state where the auto is garaged." *Id.* (emphasis added). Seals had other available insurance, so the insurance company claimed he was not entitled to coverage under the dealership's Liability policy and thus also was not entitled to coverage under the UIM policy. *See id.*

The Supreme Court of Virginia disagreed. Although the court found that Seals was not entitled to coverage under the Liability policy because he had his own personal insurance, it nonetheless concluded that Seals was entitled to coverage under the UIM Endorsement because the motor vehicle he was driving was covered under the language of the UIM Endorsement. *See id.* at 862–64. In reaching that conclusion, the court said "we *begin* . . . with the UM/UIM endorsement." *Id.* at 863 (emphasis added). That provision, like here, defined "anyone we protect" as "anyone else occupying a covered auto." *Id.* A "covered auto," according to the Endorsement, was "*a motor vehicle . . . to which the bodily injury . . . liability coverage . . . applies.*" *Id.* (emphasis added). Because the definition from the Endorsement provided that the UIM policy applied to "*a motor vehicle . . . to which the bodily injury . . . liability coverage . . . applies,*" then it applied to the vehicle Seals was driving. *Id.* (emphasis added). Thus, since the *vehicle* was covered under the Liability policy, and Seals was not personally excluded from the UIM coverage, he was entitled to recover under the policy. *See id.*

Despite the majority opinion's contention that the Declarations Pages controlled the outcome in *Seals*, the opinion states that the "proper inquiry" in determining whether

Seals was entitled to coverage under the UIM policy focused on the language of the UIM Endorsement. *Id.* The reason the court then looked to the Declarations Pages was *because* the Endorsement explicitly cross-referenced them, as is the case here. *See id.* Accordingly, under *Seals*, the "proper inquiry" is to *first* look at the coverage provision in the UIM Endorsement, and then look to the Declarations Pages definition cross-referenced by the Endorsement. *Id.*

Even if *Seals* does not control this case due to the conflict between the coverage provisions in the Endorsement and the Declarations Pages, the Plaintiffs would nonetheless be entitled to coverage because Virginia law dictates that ambiguous provisions in insurance contracts be construed in favor of coverage. *See Williams*, 677 S.E.2d at 302. The majority opinion maintains that this principle should not apply here because the language of the Endorsement was drawn verbatim from a form created by the Virginia State Corporation Commission ("SCC"), which requires the Endorsement be used for every motor vehicle policy issued in Virginia.

Virginia law does not support the majority opinion's contention that the SCC form abrogated the well-established rule that ambiguous provisions in insurance contracts must be construed in favor of coverage. Tellingly, neither the majority opinion nor the Defendant cites a single Virginia case—nor have I found any—declining to apply this canon. The majority opinion is correct that in *Appalachian Regional Healthcare v. Cunningham*, 806 S.E.2d 380 (Va. 2017), the Supreme Court of Virginia stated that the canon "exists *in part* because '[i]nsurance policies are contracts whose language is ordinarily selected by insurers rather than by policyholders.'" *Id.* at 386 n.10 (quoting

25

*Gov't Emps. Ins. Co. v. Moore*, 580 S.E.2d 823, 828 (Va. 2003)) (emphasis added).  But in *Cunningham*, the Supreme Court of Virginia expressly declined to address application of the canon because it found the contract at issue was not ambiguous.  *See* 806 S.E.2d at 386 n.10.  Thus, the quoted language is dicta, and, more importantly, provides no support for the contention that the canon is inapplicable when the state drafts an Endorsement.  Indeed, given that an insurer's status as the drafter of the contract is only a "part" of the rationale behind the canon, *Cunningham* implies that other reasons would still favor applying the canon, even when the insurer is not the drafter.  *Id.*  That would seem to be particularly true when, as here, a state regulator has rendered a judgment as to what language should be included in an insurance contract.

The majority opinion concludes by arguing that my reasoning leads to "absurdity" by espousing "a public policy choice made at no place in Virginia law"—that an automobile insurance policy "extend[s] UIM coverage to every vehicle to which it extended liability coverage."  *Ante* at 17.  Not so.  There is no dispute that the language of the SCC's required UIM Endorsement defines "[c]overed auto" as "a motor vehicle . . . with respect to which the 'bodily injury' or 'property damage' *liability coverage* of the policy applies."  J.A. 104 (emphasis added).  And the SCC's requirement that insurance contracts include this form language is amenable to at least two interpretations, neither of which support the majority opinion's assertion that my position leads to "absurdity."

On the one hand, the Endorsement's required language could be treated as the reasoned judgment of a state regulator creating a new standard of UIM coverage, above the minimum required by statute.  To be sure, the Supreme Court of Virginia has held

26

that the *statute* does not require UIM coverage for non-owned vehicles. *See Stone*, 478 S.E.2d at 886. But that does not necessarily mean that the SCC, as a state administrative body, cannot—and did not—use the form to create a regulatory requirement above the floor created by the statute. If that is indeed the case, the Endorsement would not lead to "absurdity," but would instead represent a "public policy choice" made by the Commonwealth of Virginia, rather than one created by this Court. *Ante* at 17.

On the other hand, one could view the Endorsement's definition of "[c]overed auto" as providing a default definition from which the parties can agree to deviate through negotiated contractual provisions. To do so, however, the contract would need to include language clearly establishing that the parties intended to limit UIM coverage— language which the policy at issue here lacks and which would prevent the "absurdity" feared by the majority. *Id.* For example, the parties could include language in the Declarations Pages stating that, "notwithstanding the language of the Uninsured/Underinsured Motorist Endorsement, the definition of 'covered vehicles' indicated in these Declarations controls." Yet, the policy at issue here makes no mention of the conflicting language in the Declarations Pages and the Endorsement, nor does it expressly provide that the coverage language in the Declarations Pages controls. Considering that the Endorsement, by its own terms, "**CHANGES THE POLICY**," J.A. 104, the insurance company's acquiesce to this conflict is as much evidence that the Endorsement controls as it is to the contrary. In other words, we are left without clear evidence as to how the parties in this case wanted that conflict resolved. We should

27

therefore construe this ambiguous aspect of the contract in favor of coverage. *See Williams*, 677 S.E.2d at 302.

Deciding between these two possibilities is a complex question of state law not raised by the parties in this case. As such, we are left with another level of ambiguity—not just the internal ambiguity between the documents themselves but also the ambiguity created by the competing positions of different branches of the Virginia government. The majority writes its opinion under the guise of federalism, but the majority is merely choosing to rely on language in an opinion of the Supreme Court of Virginia over language in a form promulgated by a state regulator—form language that does not even necessarily conflict with the state court opinion. That decision no doubt advances the majority opinion's policy objective. But "[a]s a court sitting in diversity, we are bound to apply state law, not create it." *Ante* at 18. We should therefore not be establishing state policy, particularly when doing so potentially requires choosing between the policy preferences of two different branches of state government. Rather, we should follow undisputed state law regarding the proper approach to interpreting Virginia insurance contracts: construe ambiguous provisions in favor of coverage. *See Williams*, 677 S.E.2d at 302.

This Court should recognize the multi-layered ambiguity presented by the documents in this case and apply that canon of construction. The Plaintiffs should thus be entitled to coverage under the policy, and the district court should be reversed. Nothing presented by this case justifies the majority's efforts to create an unprecedented

28

exception to a well-established principle of state law.  For these reasons, I respectfully dissent.